# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| TERRANCE SMITH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:16-CV-213 (LJA) |
| | : | |
| BIBB COUNTY | : | |
| SCHOOL DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants Bibb County School District ("the District"), the Board of Public Education for Bibb County (the "Board"),[1] Dr. E. Steven Smith,[2] and Dr. Curtis L. Jones' collective Motion for Summary Judgment. Doc. 15. For the reasons stated below, Defendants' Motion, Doc. 15, is **GRANTED in part and DENIED in part**.

## BACKGROUND

Plaintiff Terrance Smith initiated this action on June 8, 2016, against his former employer. Doc. 1. Plaintiff's Complaint asserts six causes of action: (1) sex discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; (2) sex discrimination in violation of 42 U.S.C. § 1983; (3) retaliation in violation of Title VII; (4) retaliation in violation of § 1983; (5) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and (6) breach of contract in violation of Georgia law. Doc. 1 at 1-2. Specifically, the Complaint alleges Plaintiff was discriminated against by his employer based on his sex when he was not offered a position with the district for which he had applied and that he was retaliated against when the District: (1) failed to pay Plaintiff the correct salary subsequent to Plaintiff filing his first EEOC complaint that alleged sex discrimination; (2) offered him a position if he would drop his first EEOC complaint; (3) did

---

[1] The Board was "incorrectly named Bibb County Board of Education" in the Complaint. Doc. 15 at 1.
[2] Dr. Steven Smith was "incorrectly named 'E. Stephen Smith' in Plaintiff's Complaint." Doc. 15 at 1.

not consider Plaintiff for positions for which he was qualified; (4) did not renew Plaintiff's employment contract; and (5) did not renew Plaintiff's contract one day after his return from FMLA leave. Doc. 1 at 20-26. The Complaint also alleges that the District breached a 2014 agreement with Plaintiff whereby the parties agreed to appoint Plaintiff to a position within the District in exchange for Plaintiff's dismissal of his first EEOC complaint and a 2015 agreement whereby the District was to appoint Plaintiff to the position of Grant Writer. Doc. 1 at 26-27. On March 11, 2017, Defendants moved for summary judgment. Doc. 15. Plaintiff and Defendants timely filed their respective response and reply. Docs. 20 & 21.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cty.*, 552 F. App'x 902, 904 (11th Cir. 2014).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Allen*, 121 F.3d at 646.

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by

presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24; *Barreto*, 331 F. App'x at 673. Local Rule 56 further requires that "documents and other record materials relied upon by [the moving party] be clearly identified for the court." M.D. Ga. L.R. 56. "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." *Id.*

"When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556-57 (11th Cir. 2014) (internal citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

"In the Eleventh Circuit, a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *U.S. v. Delbridge*, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (citing *Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004)). Rather, the Court is "required to make an independent review of the record" and assess the merits of the arguments before deciding the summary judgment motion; however, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Mason*, 24 F. Supp. 3d at 1260-61 (explaining that a court is not obligated to "read minds" or "construct arguments or theories" that a party did not raise).

As the nonmovant facing a motion for summary judgment, Plaintiff was required to identify those material facts as to which he contends there exists a genuine dispute to be tried. The Local Rules require those responses to controvert statements of material facts in

motions for summary judgment with "specific citation to particular parts of materials in the record." *See* M.D. Ga. L.R. 56. Here, Plaintiff's Response to Defendants' Statement of Material Facts fails to comply with the Local Rules. Plaintiff fails to deny certain allegations by Defendants. *See, e.g.*, Doc. 20-2 ¶¶ 10, 23, 26, 42. Accordingly, as to all statements asserted by Defendants in their Motion that are supported by specific record citation, the Court deems them to be admitted where Plaintiff has failed properly to respond in accordance with the Local Rules.

## FACTS

Plaintiff, an African-American male, was hired by the District on January 9, 2012, in the classified position of Coordinator of Parent Education at the District's Welcome Center. Doc. 15-1 ¶¶ 1-2.[3] Classified employees of the District are not required to hold a Georgia teaching certificate but may be professionals who are skilled in various areas. Doc. 15-1 ¶ 3. Accordingly, Plaintiff was not required to hold, nor did he possess, a valid Georgia Teaching Certificate while in that position. Doc. 15-1 ¶ 6. The job description for Coordinator of Parent Education stated that Plaintiff was responsible for "providing effective leadership and coordinating multifaceted efforts to support the vision and mission of the Bibb County Public Schools system by providing educational support, guidance and assistance to parents in an effort to support/enhance the parents' ability to assist the academic instructional efforts of their children." Doc. 15-1 ¶ 4. The job description required that Plaintiff have a Master's degree or higher and a minimum of three years working at a post-secondary institution. Doc. 15-1 ¶ 5. Plaintiff has a PhD in Educational Leadership. Doc. 20-4 ¶ 3. Plaintiff worked at the District's Welcome Center from January 2012 until the end of the 2013-2014 fiscal year. Doc. 15-1 ¶ 7.

In 2013, the District changed its student-registration process. Previously, students seeking to enroll in Bibb County Schools reported to the Welcome Center to register for classes. The change allowed registration to take place at the individual schools within the

---

[3] The relevant facts are derived from the parties' statements of material facts and responses thereto, and the record in this case. Docs. 15-1, 20-2, 20-3. Where relevant, this factual summary also contains undisputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

District. Doc. 15-1 ¶ 8. As a result, the Welcome Center positions, including Plaintiff's position, were eliminated or reassigned as part of a Reduction In Force ("RIF"). Doc. 15-1 ¶ 9.

During the spring of 2014, Plaintiff applied for the following positions within the District: (1) high school principal, (2) high school assistant principal, (3) middle school principal, (4) middle school assistant principal, (5) elementary school principal, (6) elementary school assistant principal, (7) Alternative Education Program supervisor, and (8) GEAR-UP Graduation advisor. Doc. 15-1 ¶ 12. The District's postings for principal and assistant principal positions in elementary, middle and high school all required that candidates possess an L5 Georgia Educational Leadership Certification or an equivalent out-of-state educational leadership certification and a minimum of five years of experience in public education, including successful experience as a classroom teacher. Doc. 15-1 ¶¶ 13, 14. The District's Alternative Education Program supervisor position also required a minimum of five years of experience as a classroom teacher as well as a Georgia Educational Leadership Certification or equivalent out of state educational leadership certificate. Doc. 15-1 ¶ 17. The GEAR UP Graduation Advisor position required that the candidate have an educational certification in grades 6-12, or be eligible for P-12 certification in school counseling or social work. Doc. 15-1 ¶ 19.

At the time Plaintiff applied to these positions, during the spring of 2014, he did not possess any of the required certificates nor did Plaintiff have a minimum of five years of classroom experience in teaching at the kindergarten through twelfth grade level. Doc. 15-1 ¶¶ 15-16, 18. Similarly, at the time Plaintiff applied to these positions, he was not eligible for a P-12 certification in school counseling or social work. Doc. 15-1 ¶ 20. According to Plaintiff, these standards were not enforced and Plaintiff had collegiate-level classroom experience. Doc. 20-2 ¶¶ 13-14, 16. Plaintiff asserts that he obtained the Georgia Education Certification in Educational Leadership in May 2015. Doc. 20-2 ¶ 20.

Plaintiff admits that he did not have the requisite certifications or experience for these positions but asserts that he "applied for several other positions within the District [including], College and Career Coordinator, Family Education Specialist (Job 335), and

5

Family Engagement Facilitator (Job 371)," for which he was qualified. Doc. 20-4 ¶¶ 15-16. There is no evidence in the record regarding the requirements for these positions.[4] Plaintiff was not selected to fill these positions. Doc. 15-1 ¶ 21. Plaintiff asserts, in the briefing, that the Family Education Specialist position went to a less qualified woman, Pamela Richardson; however, other than noting that Pamela Richardson was his subordinate, Plaintiff presents no evidence of Pamela Richardson's qualifications—let alone relative to his. *See* Docs. 20-4 ¶ 24; 20-3 ¶¶ 25-27.

On July 18, 2014, Plaintiff was offered a position as a provisional teacher at Northeast High School with the understanding that he would enroll in and successfully complete the Middle Georgia Regional Education Service Agency's Georgia Teacher Academy for Preparation and Pedagogy ("TAPP") program. Doc. 15-1 ¶ 24. Approximately eleven days later, on July 29, 2014, Plaintiff filed a charge of discrimination against the District alleging that he had not been chosen to fill any of the positions for which he applied because of his race and his sex. Docs. 15-1 ¶¶ 21-22; 15-5 at 9.

In October 2014, the parties engaged in a mediation session, and then superintendent Dr. Steven Smith met with Plaintiff to discuss his July 29, 2014 EEOC complaint.[5] Doc. 15-1 ¶ 25. After discussion, Dr. Smith agreed to appoint Plaintiff as a half-time assistant principal and half-time math teacher at Northeast High School in exchange for Plaintiff's agreement that he would dismiss his July 2014 EEOC complaint, enroll in and complete the TAPP program, and obtain the necessary certifications. Doc. 15-1 ¶¶ 26-27. On September

---

[4] The Court notes that Plaintiff relies heavily on his Supplemental Statement of Facts. Doc. 20-3. Many of the "facts" set forth in the Supplemental Statement of Facts are not supported by citation to the record. Accordingly, these "facts" are not considered by the Court. Specifically, with regard to Plaintiff's assertion in his Supplemental Facts as to the specific requirements of College and Career Coordinator, Family Education Specialist, and Family Engagement Facilitator, the record citation given by Plaintiff does not specify the requirements for these positions. *See* Doc. 20-3 ¶ 20 (citing Doc. 20-4 ¶ 18). Thus, the Court will not consider this "fact." *See* M.D. Ga. L.R. 56.

[5] In its Motion, the District submitted evidence of the parties' settlement negotiations regarding both the 2014 and 2015 EEOC complaints discussed herein. *See, e.g.*, Doc. 15-1 ¶ 53. While evidence of settlement negotiations is not admissible in most cases, *see* Fed. R. Evid. 408, and courts generally do not consider such evidence on a motion for summary judgment, *Clay v. Equifax, Inc.*, 762 F.2d 952, 956 (11th Cir. 1985), Plaintiff's assertion that his claims were settled puts the content of the settlement negotiations at issue. Therefore, the Court will consider this evidence submitted by Defendants. *See Glob. Fleet Sales, LLC v. Delunas*, 203 F. Supp. 3d 789, 819 (E.D. Mich. 2016); *Mauldin v. Shaffer*, 1977 WL 1050, at *12 (M.D. N.C. Oct. 7, 1977).

17, 2015, the EEOC notified the parties that it would discontinue its investigation into Plaintiff's July 2014 EEOC charge of discrimination because the matter had been settled. Doc. 15-1 ¶ 59. There is no evidence that either party objected to the EEOC's decision.

Plaintiff does not contest the fact that the parties agreed to this resolution of the 2014 EEOC complaint. Rather, Plaintiff states that because the parties never agreed on the exact amount Plaintiff would be paid, "[t]he settlement agreement was never finalized," and Plaintiff "could not drop the EEO[C] claim." Docs. 20-2 ¶ 26; 20-3 ¶ 32; 20-4 ¶¶ 29, 35. Plaintiff asserts that Defendants offered to pay him a salary based on thirteen years of service instead of Plaintiff's twenty-five years of educational experience and that the parties never reached an agreement as to his exact salary. Doc. 20-2 ¶¶ 26, 36.

While Plaintiff did not dismiss his 2014 EEOC charge of discrimination, he assumed the position at Northeast High School on November 1, 2014. Doc. 15-1 ¶¶ 27, 28. In his new position, Plaintiff did not have tenure. Doc. 15-1 ¶¶ 48-49. On December 11, 2014, Plaintiff was placed on a Remediation Plan (the "Plan"). Doc. 15-1 ¶¶ 29-30. Plaintiff agreed to the terms of the Plan which required him to become highly qualified in the area of "assistant principal." Doc. 15-1 ¶¶ 29-30. In addition, Plaintiff agreed that he would obtain an educational waiver certificate, meet the Georgia Special Requirement of taking the Intro to the Exceptional Learner Course and obtain a clear renewable Georgia certificate by February 2015. Doc. 15-1 ¶ 31. Plaintiff did not timely meet these requirements. Doc. 15-1 ¶ 32-35.

In February and again in April of 2015, Plaintiff applied for and was granted FMLA leave to care for his sick mother. Doc. 15-1 ¶¶ 40-41, 44. On the second occasion, Plaintiff returned to work as scheduled on or about April 14, 2015. Docs. 15-5 at 12; 20-3 ¶¶ 35-36.

In 2015, the District consolidated schools and reduced the number of staff in some schools to address the District's financial needs. As a result, several principal, assistant principal and teacher positions were eliminated. Doc. 15-1 ¶ 46. It appears that Plaintiff's position was one of these eliminated positions.[6] On April 15, 2015, Plaintiff was notified that

---

[6] Under the District's operating procedures, if a school has 1 to 699 students, it earns one assistant principal. Doc. 15-1 ¶ 47. The projected number of students for Northeast High School for the 2015-2016 school year was 667 students. *Id.* The parties do not specifically state how many assistant principals Northeast

7

his employment with the District would not be renewed for the 2015-2016 school year. Docs. 15-1 ¶¶ 50-51; 15-7 at 4. The District represents that Plaintiff's position was eliminated as part of the consolidation. Doc. 20-2 ¶ 50. On July 13, 2015, Plaintiff filed a second charge of discrimination with the EEOC alleging that the District's requirement that he complete the Plan when "lessor qualified assistant principals did not have to do so" and the non-renewal of his contract were acts of retaliation against him for his July 2014 EEOC complaint. Doc. 15-1 ¶ 52.

In his Response to the Motion, Plaintiff attached declarations from Tom Hudson, Edward Judie, Jr., and Plaintiff. Docs. 20-4, 20-5, 20-6. Hudson was a member of the Board for twelve years. Doc. 20-5 at 1. In his declaration, Hudson avers that: (1) "During [his] time with the [Board], [Hudson] noticed a pattern of female employees being treated more favorably than black male employees;" (2) "[Plaintiff's] expertise and knowledge would have allowed him to be appointed into one of the many open positions that were available at the time he applied;" (3) it was "common practice for the Superintendent to use the budget to justify terminating employees they do not want around anymore;" (4) "various other comparable employment positions would be created once the original position was absolved;" and (5) it "appears as though Dr. Smith had been retaliated against for filing an EEOC complaint alleging discrimination based on sex and race." Doc. 20-5 at 2-4. Judie was a Deputy Superintendent for the District during the time of Plaintiff's employment. Doc. 20-6 at 2. Judie was responsible for "oversight of the [ ] District Budget and handling of EEOC complaints." *Id.* Judie avers that during his tenure, "it was not uncommon for Superintendent[s] Smith and . . . Jones to use whatever means they could to silence these [EEOC] complaints." *Id.* Both Hudson and Judie declare, without identifying specific positions, that two females that were less qualified than Plaintiff had positions created for them following the RIF. Docs 20-5 & 20-6. In his own declaration, Plaintiff avers that he "was informed by Randy Howard, an in house attorney for Bibb County, that [Plaintiff] was being 'black-balled' due to the fact that [Plaintiff] ha[d] an outstanding EEOC complaint. [Howard] further[ ] [informed Plaintiff] that Superintendent Jones would not offer [Plaintiff]

---

High School had, but as Plaintiff was hired as a half-time principal, the Court concludes that there was at least one other assistant principal at the school in 2015.

a job since [he] had a pending EEOC complaint." Doc. 20-4 ¶ 41 (punctuation omitted). Mr. Howard did not file a declaration.[7]

Plaintiff's Complaint also alleges that the parties made an agreement at some point in 2015 to place Plaintiff in a position with the District. Doc. 1 ¶¶ 53-56. Plaintiff has put forth no evidence of this alleged agreement, and, while Defendant submitted evidence of the parties' 2015 settlement negotiations, that evidence indicates that no agreement was reached. Doc. 15-1 ¶¶ 53-58. Prior to the filing of the instant action, the parties again engaged in negotiations to resolve Plaintiff's EEOC complaints. On August 12, 2015, counsel for Plaintiff e-mailed Defendants' counsel and relayed Plaintiff's demand that he be appointed to the position of "district-wide grant writer" in addition to receiving back pay and other "non-monetary assurances." Doc. 15-1 ¶ 53. On August 17, 2015, Plaintiff's counsel sent an e-mail to Defense counsel stating that Plaintiff had seen the job "posted within the last year or so;" that the position was "not a position that [Plaintiff] created" and to let her know if

---

[7] These statements allegedly made to Plaintiff by Mr. Howard are hearsay and are not considered. *See* Fed. R. Evid. 801. Generally, hearsay cannot be considered on a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). "Nevertheless, a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1293–94 (punctuation omitted). "[A] suggestion that admissible evidence might be found in the future . . . is not enough to defeat a motion for summary judgment." *Id.* (punctuation omitted). "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Id.* at 1294. Plaintiff has not put forth evidence or argument showing that Plaintiff's statement that Mr. Howard told him he was being "black-balled" could be reduced to admissible evidence. While Plaintiff submitted three declarations, he did not submit a declaration from Mr. Howard. Mr. Howard is not a party to the action; nor is he a disinterested party. Thus, there is no basis for the Court to assume he will testify to this alleged fact. *See Molina v. Spanos*, 208 F.3d 226 (10th Cir. 1999) (affirming district court's refusal to consider third-party characterization of a witness' testimony on summary judgment because "a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) ("A third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill.").
Moreover, while Plaintiff has averred that Mr. Howard is "an in house attorney for Bibb County," he has not indicated, specifically, how Mr. Howard came about such knowledge. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting that Rule 56 of the Federal Rules of Civil Procedure requires that affidavits (or declarations) that oppose summary judgment motions must be made on personal knowledge). Further, while "[a] statement made by a non-decisionmaker *may* be both relevant and attributable to the defendant employer if the non-decisionmaker was sufficiently involved in the decisionmaking process leading up to the adverse employment action," *Calvert v. Doe*, 648 F. App'x 925, 928 (11th Cir. 2016) (emphasis added) (punctuation omitted), Plaintiff has not argued that Mr. Howard's statements fall into the rule discussed in *Calvert*, that these statements are not hearsay, or that they fall into a hearsay exception. *See, e.g.*, Fed. R. Evid. 801(d)(2). Thus, the Court does not consider the alleged statements from Mr. Howard to Plaintiff.

there were any additional questions. Doc. 15-1 ¶ 55. On August 19, 2017, counsel for Defendants sent an e-mail and letter by regular mail informing Plaintiff's counsel that the position of "district-wide grant writer" did not exist within the District and the District did not owe the Plaintiff any back-pay. Doc. 15-1 ¶ 56. On August 24, 2015, Plaintiff's counsel asked whether Plaintiff could fill one of the District's special education positions. Doc. 15-1 ¶ 57. On August 28, 2015 Defense counsel e-mailed Plaintiff's counsel that there was not a math teacher position available at the Burghard Opportunity Center. Doc. 15-1 ¶ 58. This lawsuit was filed thereafter.

## DISCUSSION

As an initial matter, "county school boards lack the capacity to sue or be sued under Georgia law." *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013). Thus, Defendant Board of Public Education for Bibb County cannot be sued, and all claims against it are **DISMISSED**. Moreover, "when an officer is sued . . . in his . . . official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (punctuation omitted). Plaintiff is suing Dr. E. Steven Smith and Dr. Curtis L. Jones in their official capacities only and is suing the District for which they worked. Doc. 1. Because Plaintiff's claims against Defendants Dr. E. Steven Smith and Dr. Curtis L. Jones in their official capacities are duplicitous of Plaintiff's claims against Defendant Bibb County School District, the claims against Drs. Smith and Jones are **DISMISSED**. The Court now addresses Plaintiff's claims against the District.

The District argues that Plaintiff's § 1983 claims are time-barred. Doc. 15-2 at 14. "It is [ ] well-settled that § 1983 claims filed in Georgia are governed by [Georgia's] two-year statute of limitations for personal-injury actions." *Flowers v. Fulton Cty. Sch. Sys.*, 654 F. App'x 396, 401 (11th Cir. 2016). "The statute of limitations does not begin to run until the facts supporting the cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 864 (11th Cir. 2013). While the District argues that the operative date is May 30, 2014, there is no evidence to support this assertion. The District relies on a misreading of

10

Plaintiff's 2014 EEOC complaint. While Myra Abrams averred that: "In his July 29, 2014 charge of discrimination, Plaintiff alleged that the District's discrimination against him took place between April 28, 2014 and May 30, 2014," what Plaintiff actually stated in his 2014 EEOC complaint was that: "Between April 2014 and May 2014, I applied for approximately nine positions as an Administrator, Principal, and Assistant Principal. I was only interviewed for one of those positions." Doc. 15-5 ¶ 12, p. 9. That Plaintiff applied for positions during this time period is not evidence of when he was denied the positions or when the decision was made to not consider him for these positions. Thus, the only date in evidence of Plaintiff's knowledge of the alleged discriminatory act is the date he filed his 2014 EEOC complaint, which would fall within the statute of limitations.

"Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts, and in such cases, the claims are subject to the same legal analysis." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (punctuation omitted). Thus, the Court will analyze Plaintiff's Title VII and § 1983 claims under the same Title VII framework.

### I. Sex Discrimination

Plaintiff claims he was not considered for certain positions within the District because of his sex. "It is unlawful under Title VII for employers to discriminate against any individual on account of the individual's sex." *Peppers v. Cobb Cty.*, 835 F.3d 1289, 1295 (11th Cir. 2016); 42 U.S.C. § 2000e-2(a)(1). A plaintiff may show discriminatory treatment by his employer by presenting direct evidence of intent to discriminate. *Underwood v. Perry Cty. Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005). Where, as here, a plaintiff presents no direct evidence of discrimination,[8] he may present circumstantial evidence of discrimination, which courts analyze under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411

---

[8] "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (punctuation omitted). "Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (citations and punctuation omitted). While Plaintiff presents evidence in the form of declarations from a former Board member and a former Deputy Superintendent stating generally, without any specifics or support, that Defendants treated female employees more favorably than black male employees and that positions were created for less-qualified women after RIF, Docs. 20-5 & 20-6, these statements do not qualify as direct evidence as they do not speak directly to Plaintiff's claims and are subject to more than one interpretation.

U.S. 792 (1973). *Underwood*, 431 F.3d at 794. Under this framework, to establish a *prima facie* case of failure to hire or promote, the plaintiff must prove that "(1) [ ]he is a member of a protected class, (2) [ ]he was qualified for a position and applied for it, (3) [ ]he was not considered for the position despite h[is] qualifications, and (4) equally or less qualified individuals outside of h[is] protected class were considered or hired for the position." *Id.*

Here, with regard to the positions of (1) high school principal, (2) high school assistant principal, (3) middle school principal, (4) middle school assistant principal, (5) elementary school principal, (6) elementary school assistant principal, (7) Alternative Education Program supervisor, and (8) GEAR-UP Graduation advisor, Plaintiff has not established a *prima facie* case. While Plaintiff has established that he is a male and thus a member of a protected class, he has not presented evidence that he was qualified for these positions. Thus, he cannot establish the remaining elements of his *prima facie* case as to these positions.[9]

In Plaintiff's Response to the District's Motion, Plaintiff avers that he "applied for several other positions within the District [including], College and Career Coordinator, Family Education Specialist (Job 335), and Family Engagement Facilitator (Job 371)." Doc. 20-2 ¶ 12. Plaintiff was not selected for any of these positions. Doc. 20-4 ¶¶ 16-18. Plaintiff provides details only as to the Family Engagement Facilitator position, averring that he applied for the position of Family Engagement Facilitator, was not interviewed for that position, and that the position was subsequently filled by Pamela Richardson. Docs. 20-3 ¶ 25-27; 20-4 ¶ 24. Plaintiff avers that he was "more qualified" than Pamela Richardson and that Richardson had been a subordinate of Plaintiff's at the Welcome Center. Docs. 20-3 ¶¶ 25-27; 20-4 ¶ 24.

---

[9] Plaintiff also had the option of bypassing the *McDonnell Douglas* framework if he presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination" by his employer. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[P]laintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."). Here however, Plaintiff has not put forth specific instances that create a mosaic, much less a convincing mosaic, from which a jury could infer sex discrimination on the part of the District with regards to the positions for which Plaintiff applied. Nor do the general allegations in the declarations from a former Board member and a former Deputy Superintendent create such a mosaic. *See* Docs. 20-5 & 20-6.

Plaintiff has failed to present evidence establishing that he was qualified for the position of Family Engagement Facilitator or that a less qualified person outside of his class was hired. There is no evidence in the record of the requirements of the Family Engagement Facilitator position. "An affidavit cannot be conclusory." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). Plaintiff's statement in his declaration that he was "fully qualified to perform [the position] based on my experience and education," Doc. 20-4 ¶¶ 15-16, is a conclusory statement—which, standing alone, is insufficient evidence of the position's requirements or that Plaintiff met them. Likewise, Plaintiff's assertion that he "was more qualified than Ms. Richardson," *Id.* ¶ 24, is not evidence of her qualifications or lack thereof. Nor is the fact that Ms. Richardson was Plaintiff's subordinate at the Welcome Center evidence that Ms. Richardson was less qualified than Plaintiff. As Plaintiff has only presented conclusory statements in his declaration, he has failed to establish a *prima facie* case of sex discrimination with regard to the other position to which he applied, and summary judgment is appropriate as to this claim.

**Retaliation**

    a. **Title VII**

Plaintiff claims that he was retaliated against for filing his 2014 EEOC complaint. Plaintiff alleges both statutory and § 1983 equal protection retaliation claims. Doc. 1 ¶¶ 82, 92. "The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the equal protection clause [of the Fourteenth Amendment] to be free from retaliation." *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 (11th Cir. 1995) (emphasis in original). Plaintiff's Complaint makes no mention of retaliation in the First Amendment context. Further, because the Eleventh Circuit does not recognize a Fourteenth Amendment § 1983 retaliation claim, the District is entitled to judgment as a matter of law on Plaintiff's § 1983 retaliation claims.

Plaintiff claims that the District retaliated against him by (1) failing to pay him the correct salary subsequent to Plaintiff filing his 2014 EEOC complaint; (2) offering him a position if he would drop his 2014 EEOC complaint; (3) not considering Plaintiff for positions for which he was qualified; and (4) not renewing Plaintiff's employment contract.

13

Doc. 1 ¶¶ 84-87.[10] Plaintiff presents evidence of retaliation in the form of declarations from Hudson and Judie, a former member of the Board of Education and a former Deputy Superintendent, respectively. Neither declarant avers that he has first-hand knowledge that *Plaintiff* was fired or not given a position because he filed an EEOC complaint. Both do, however, state that the District's Superintendent had a practice of retaliating against persons who filed EEOC complaints against the District. Docs. 20-5 at 2-4; 20-6 at 2. This evidence is insufficient to stand as direct evidence but is sufficient to establish the *prima facie* causal connection and to rebut the District's proffered reason for its employment decision. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (noting that direct evidence is evidence proving the existence of a fact without inference or presumption); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (listing cases involving the statements and actions of employers or supervisory employees that constitute direct evidence).

As Plaintiff has not produced direct evidence of retaliation, the Court applies the *McDonnell Douglas* burden-shifting framework. With regard to Title VII, "[t]o establish a *prima facie* case of retaliation, the plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). Unlike other Title VII claims, "Title VII retaliation claims require proof that the protected activity was a but-for cause of the alleged adverse action by the employer." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (punctuation omitted), *cert. denied sub nom. Trask v. Shulkin*, 137 S. Ct. 1133 (2017).

Plaintiff has established a *prima facie* case of retaliation under Title VII. Plaintiff has made a showing that (1) he engaged in a statutorily protected expression when he filed his 2014 EEOC complaint; and (2) he suffered adverse employment actions related to the position at Northeast High School when Plaintiff did not receive a salary commiserate with

---

[10] Plaintiff also claims that the District retaliated against him by not considering him for some unnamed positions Plaintiff applied for after the non-renewal of his contract in 2015. Doc. 1 ¶¶ 50, 80, 86. The District moved for summary judgment on Plaintiff's retaliation claims. *See* Doc. 15-2. As Plaintiff's briefing and submitted evidence make no mention of the District's failure to consider him for these unnamed positions, there is no genuine issue of material fact as to these unnamed positions.

his experience and when Plaintiff's contract was not renewed subsequent to Plaintiff filing his 2014 EEOC complaint.[11] "[I]f an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." *Akins v. Fulton Cty.*, 420 F.3d 1293, 1300 (11th Cir. 2005). Non-renewal of an employment contract constitutes an adverse employment action.[12] *See, e.g.*, *Brown v. Sch. Bd. of Orange Cty.*, 459 F. App'x 817, 818 (11th Cir. 2012). The denial of an appropriate salary constitutes an adverse employment action. *See Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005).

Plaintiff only argues that there is temporal proximity to prove but-for causation. *See* Doc. 20 at 13-14. "[W]hen temporal proximity is used to establish a causal connection, the proximity must be very close. [The Eleventh Circuit] ha[s] held that in the absence of any other evidence of causation, a three-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Criswell v. Intellirisk Mgmt. Corp.*, 286 F. App'x 660, 664 (11th Cir. 2008) (citations and punctuation omitted). Plaintiff has not established the necessary causation through temporal proximity as there is too much time between the protected activities and the adverse employment actions. The District's non-renewal of Plaintiff's employment contract occurred in April 2015—

---

[11] Plaintiff has also alleged that his placement on the December 2014 Remediation Plan constitutes an adverse employment action. Docs. 1 ¶¶ 42-44, 52; 15-6 at 5. "When a plaintiff's poor performance evaluation and compensation are 'inextricably intertwined,' a lower performance evaluation can constitute an adverse employment action in the racial discrimination context. However, when a lower performance evaluation does not result in a 'loss of pay or benefits or further discipline,' it does not constitute an adverse employment action." *Rainey v. Holder*, 412 F. App'x 235, 238 (11th Cir. 2011) (citation and punctuation omitted). Here, Plaintiff has not alleged that the Plan was similar to a performance review—rather, the evidence indicates that he was placed on the Plan because he was hired as an assistant principal even though he did not have the requisite qualifications. The Plan was an attempt to bring him up to par. Plaintiff also has not alleged that his placement on the Plan had any effect on his compensation.

Plaintiff also alleges that the settlement negotiations constitute an adverse employment action. Doc. 1 ¶¶ 83, 87. Plaintiff willingly engaged in settlement negotiations after filing his EEOC complaint. The District's participation in these negotiations does not constitute an adverse action.

[12] Plaintiff also alleges that the District retaliated against him for filing his 2014 EEOC complaint by not appointing him to the positions for which he applied. Doc. 20 at 13-14. Failure to promote or hire constitutes an adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008). As these adverse decisions were made some time before Plaintiff's July 29, 2014 EEOC complaint, they cannot be casually related to post-EEOC complaint retaliation.

15

nearly one year after Plaintiff filed the 2014 EEOC complaint. Any non-payment of Plaintiff's salary happened after October 2014, over three months after the filing of his 2014 EEOC complaint. These adverse actions are not proximate enough to create a jury issue as to causation.

The declarations from Hudson and Judie, however, are sufficient evidence of causation. In Hudson's declaration, Hudson avers that: "In my experience over the last 2 years, it has become common practice for the Superintendent to use the budget to justify terminating employees they do not want around anymore. The Superintendent would state there was not enough money in the budget for a particular position but, then various other comparable employment positions would be created once the original position was absolved [*sic*]," and that it "appears as though Dr. Smith had been retaliated against for filing an EEOC complaint alleging discrimination based on sex and race." Doc. 20-5 ¶ 13, 17. In Judie's declaration, Judie avers that during his tenure, "it was not uncommon for Superintendent[s] Smith and . . . Jones to use whatever means they could to silence these [EEOC] complaints." Doc. 20-6 at 2. Thus, Plaintiff has established a *prima facie* case of retaliation.

"Once the plaintiff establishes his *prima facie* case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Holifield*, 115 F.3d at 1566 (citation omitted). Here, the District has proffered a non-discriminatory reason for its non-renewal of Plaintiff's contract—the District's budgetary needs and the resultant elimination of an assistant principal position at Northeast High School. Doc. 15-1 ¶ 50. Accordingly, Plaintiff must demonstrate that the District's budgetary needs were a pretext for its retaliation against Plaintiff for Plaintiff's EEOC complaints. "To show pretext, the evidence produced must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence. In short, [Plaintiff] must meet each proffered reason head on and rebut it." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295,

16

1313–14 (11th Cir. 2016) (citations and punctuation omitted). The declarations from Hudson and Judie are sufficient evidence of pretext to rebut the District's proffered reason for not renewing Plaintiff's contract. Plaintiff has presented evidence that the District's Superintendent had a "common practice" of using budget constraints as a pretext to fire employees and that "Superintendent[s] Smith and . . . Jones [ ] use[d] whatever means they could to silence [ ] [EEOC] complaints." Docs. 20-4 at 2-4; 20-6 at 2. Plaintiff's evidence directly addresses and contradicts the District's proffered reasons for its employment decision. Thus, summary judgment on this claim is not appropriate. *See Furcron*, 843 F.3d at 1313-14.

### b. FMLA

Plaintiff has alleged he was retaliated against for exercising rights under the FMLA. "To prove a retaliation claim under the FMLA, the plaintiff must show that h[is] employer intentionally discriminated against h[im] for having exercised an FMLA right. In other words, the plaintiff must show that h[is] employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Caldwell v. Clayton Cty. Sch. Dist.*, 604 F. App'x 855, 860 (11th Cir. 2015) (citation and punctuation omitted). "[T]he Eleventh Circuit has yet to directly address the issue of but for cause with respect to FMLA retaliation." *Kingsley v. Tellworks Commc'ns, LLC*, 2017 WL 2624555, at *33 n.25 (N.D. Ga. May 24, 2017), *report and recommendation adopted*, 2017 WL 2619226 (N.D. Ga. June 15, 2017).

Where, as here, the plaintiff presents no direct evidence of retaliatory intent regarding his exercise of his FMLA rights, courts analyze the circumstantial evidence presented under the burden-shifting framework of *McDonnell Douglas. Caldwell*, 604 F. App'x at 860. To make a *prima facie* showing of FMLA retaliation, Plaintiff must show that "(1) [ ]he engaged in activity protected by the FMLA, (2) [ ]he suffered an adverse employment decision, and (3) the adverse decision was causally related to the protected activity." *Id.* Again, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (citation and punctuation omitted). The Eleventh Circuit has held that "temporal

17

proximity, for the purpose of establishing the causation prong of a *prima facie* case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1272 (11th Cir. 2017); *see also Evans v. Books-A-Million*, 762 F.3d 1288, 1297 n.6 (11th Cir. 2014) (noting in interference context that fact issues could exist where employee reassigned immediately after returning from FMLA leave).

Plaintiff has established a *prima facie* case for FMLA retaliation by showing that Plaintiff requested and took approximately eight weeks of FMLA leave and that he was notified that his employment contract was not being renewed one day after the expiration of his FMLA leave. *See Diamond v. Hospice of Florida Keys, Inc.*, 677 F. App'x 586, 596 (11th Cir. 2017) (finding causation met where plaintiff fired less than two weeks after last day of FMLA leave); *cf. Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016) (holding four-month gap between firing and FMLA leave too "tenuous" to establish causation).

"The burden shifts back to [Defendant] if [Plaintiff] can establish a *prima facie* case, requiring [Defendant] to articulate a legitimate, nondiscriminatory reason for [Plaintiff's] termination. [I]f [Defendant] meets this burden, then [Plaintiff] must show that the supposedly legitimate reason was in fact a pretext designed to mask illegal discrimination." *Gulf Coast Health Care*, 854 F.3d at 1271. Again, the District has articulated a legitimate reason for the non-renewal of Plaintiff's employment contract—the District's budgetary needs and the resultant elimination of an assistant principal position at Northeast High School. Doc. 15-1 ¶ 50.

Plaintiff presents an argument that the cause of his non-renewal was because he was being "black-balled" because of his pending EEOC complaint. Doc. 20-4 at 9. Again, the Court will not consider this evidence. *See supra* note 7. Moreover, this evidence does not directly address the issue of FMLA retaliation or pretext and, therefore, does not create a genuine issue of material facts as to whether the District retaliated against Plaintiff for using FMLA leave. Further, the Hudson declaration merely states: "It appears as though Dr. Smith had been retaliated against for filing an EEOC complaint alleging discrimination based on sex and race." Doc. 20-5 at 4. Nothing in the declaration, however, indicates how Hudson

specifically came to his conclusion or what evidence he has for such a claim. Again, such unadorned, conclusory statements do not create a genuine issue of material fact. *See Stein*, 881 F.3d at 857. Thus, summary judgment on this claim is appropriate.

## II. Breach of Contract Claims

Plaintiff's Complaint alleges breach of contract under state law for breach of the 2014 agreement between the parties. Doc. 1 at 26. In Plaintiff's Response to the District's Motion, however, Plaintiff repeatedly states that the parties never came to a final agreement on Plaintiff's salary. *See, e.g.*, Doc. 20 at 17 ("[I]t is clear that the Plaintiff's 2014 claims were never settled."). Thus, there was no contract. It is axiomatic that a non-existent contract cannot be breached. Accordingly, Plaintiff has abandoned his breach of contract claim with regard to any alleged October 2014 agreement between the parties, and summary judgment is appropriate as to this claim.

With regard to the 2015 breach of contract claim, the District argues that there was no agreement between the parties and attaches email correspondence between the parties regarding Plaintiff's request to be placed in a grant writing position. Docs. 15-2 at 15; 15-8 at 3-11. From the face of these documents, it is clear that, again, there was no final agreement. *See id.*; *see also supra* note 5. Thus, summary judgment on this breach of contract claim is appropriate. *See Brackin v. Anson*, 585 F. App'x 991, 994 (11th Cir. 2014) ("[I]n opposing a motion for summary judgment, a party may not rely on his or her pleadings to avoid an adverse judgment.").

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment, Doc. 15, is **GRANTED in part and DENIED in part**. Plaintiff's claims against Dr. E. Steven Smith, Dr. Curtis L. Jones, and the Board of Public Education for Bibb County and Plaintiff's sex discrimination claims, § 1983 and FMLA retaliation claims, and breach of contract claims against Bibb County School District are **DISMISSED**. Only Plaintiff's Title VII retaliation claim against the Bibb County School District remains.

19

**SO ORDERED**, this 22nd day of March, 2018.

          /s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**